**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING**

**LARRY J. BISSETT, et al.**

        Plaintiffs,

**Civil Action No. 5:13-CV-20
(Judge Bailey)**

v.

**CHESAPEAKE APPALACHIA LLC and
STATOIL USA ONSHORE PROPERTIES, INC.,**

        Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before this Court are defendants Chesapeake Appalachia, LLC ("Chesapeake Appalachia") and Statoil USA Onshore Properties, Inc.'s (Statoil) (collectively "Chesapeake") Motion for Summary Judgment [Doc. 60] and plaintiffs' Motion for Summary Judgment [Doc. 62]. These motions have since been fully briefed and are now ripe for decision. This Court has reviewed the record and the motions and, for the reasons set out below, finds that the plaintiffs' motion should be **DENIED** and the defendants' motion should be **GRANTED**.

**I.**    **Procedural History**

The original plaintiffs were mineral rights owners in West Virginia, located in Hancock County and Brooke County, who signed oil and gas leases between August 11, 2006 and September 17, 2007 [Doc. 1].[1] All but one of the plaintiffs were either dismissed

---

[1]Chesapeake is the successor in interest to the original lessee under all of the Leases.

1

as parties or settled with the defendants after a settlement conference [Docs. 73, 81, 84]. The sole remaining plaintiff is the Vincent W. And Barbara J. Heider Family Irrevocable Trust. The trust entered into an oil and gas lease in July, 2007 for property located in Hancock County, West Virginia [Doc. 8-11].

Each lease, including the trust's lease, contains in Paragraph 2 a habendum clause for a primary term of five years, with provisions for an extension into a secondary term only if oil, gas, or constituents of either are being produced or are capable of being produced, or in the event Defendants explore or search for the minerals as provided in the leases [Doc. 1 at 5–6].

In addition, each lease contains the following provision at Paragraph 19:

> In consideration of the acceptance of this lease by the Lessee, the Lessor agrees for himself and his heirs, successors and assigns, that no other lease for minerals covered by this lease shall be granted by the Lessor during the term of this lease or any extension or renewal thereof granted to the Lessee herein. Upon expiration of this lease and within sixty (60) days thereinafter, Lessor grants to Lessee an option to extend or renew under similar terms a like lease.

[Doc. 1 at 8].

Defendant Chesapeake executed and subsequently recorded a Notice of Extension of Oil and Gas Lease relating to each of the leases and tendered to payment to plaintiffs [Id. at 6; Doc. 8-26].

The plaintiffs filed a Complaint for Declaratory Judgment and Other Relief with this Court on February 14, 2013 [Doc. 1]. The plaintiffs claim that the defendants failed to comply with the conditions set forth in Paragraph 19 of the leases and, as such, each lease expired at the end of its primary term [Id.].

Defendants instituted a counterclaim on March 15, 2013, seeking declaratory judgment that Paragraph 19 of the leases allows Chesapeake to extend the terms of the lease at its sole option at any time up to sixty days after the expiration fo the primary terms of the leases, and that the leases were validly extended for an additional five year primary term pursuant to the paragraph [Doc. 8].

The parties filed cross-motions for summary judgment, each arguing for the Court to adopt their interpretation of Paragraph 19 of the lease. The motions are fully briefed and ripe for review.

## II.     Legal Standard

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322–23 (1986). Thus, a summary judgment motion should be granted if the nonmovant fails to make a showing sufficient to establish the existence of an essential element of his claim or defense upon which he bears the burden of proof. ***Celotex***, 477 U.S. at 323. That is, once the movant shows an absence of evidence on one such element, the nonmovant must then come forward with evidence demonstrating there is indeed a genuine issue for trial. ***Id.*** at 323–24. The existence of a mere scintilla of evidence supporting the nonmovant's position is insufficient to create a genuine issue; rather, there must be evidence on which a jury could reasonably find for the nonmovant. ***Anderson v. Liberty Lobby***, 477 U.S. 242, 252 (1986).

## III.    Discussion

The parties' cross-motions for summary judgment dispute the following seven

issues: 1) whether Paragraph 19 permits Chesapeake to unilaterally extend or renew the lease or only permits Chesapeake to negotiate the terms of an extension; 2) whether the terms "extend" and "renew" have the same meaning in the context of Paragraph 19; 3) whether paragraph 19 contemplates prolonging the current lease or solely the creation of a new lease; 4) whether Paragraph 19 requires that the lease expire before Chesapeake may exercise any option rights; 5) whether the testimony of Professor Kramer establishes that Paragraph 19 is ambiguous; 6) whether Paragraph 19 is void for vagueness, indefiniteness, and/or uncertainty; and 7) whether Paragraph 19 is an anti-top leasing paragraph or a general extension or renewal provision.

### A. Whether Chesapeake Had a Unilateral Option to Renew the Lease

The plaintiffs contend that the plain language of Paragraph 19 provides the defendant with a priority option to negotiate with the plaintiff a "like lease" with "similar terms" during the sixty-day period after the expiration of the leases [Doc. 63 at 7]. The plaintiffs argue that the terms "like lease" and "similar terms" apply equally to modify both "renew" and "extend." They claim that for the Court to hold otherwise, it would be required to read Paragraph 19 as stating "an option to extend *under identical terms the existing lease* or renew under similar terms a like lease." [Doc. 63 at 4]. Accordingly, the plaintiffs claim that defendant Chesapeake was granted only an option to "extend" a like lease with similar terms, or "renew" a like lease with similar terms, and that the contract does not permit the defendant to unilaterally renew an identical lease.

This exact issue has been addressed by two Courts, including by Judge Frederick Stamp of the United States District Court for the Northern District of West Virginia. Judge

4

Stamp, analyzing Paragraph 19 of an identical lease, found as follows:

> This Court disagrees that its interpretation of the differing meanings of "renew" and "extend" in the Lease reads language into Paragraph 19. . . . [T]he term "extend" has long been defined as meaning to simply lengthen or draw out that which already exists, while renew means to start fresh or make over with a new agreement. Accordingly, the mere use of the word "extend" necessarily implies that the existing terms and existing lease would continue. In other words, the inclusion of an explanatory direct object is not necessary for the term "extend," as it necessarily means that the existing lease continues. The term "renew" however, while obviously implying the creation of a new lease, could be interpreted as allowing the Lessor to demand an entirely differing lease under very different terms. In order to limit the meaning of "renew," the contract thus must include the explanatory direct objects of "like lease" and "similar terms."

*Brown v. Chesapeake Appalachia, LLC*, 2013 U.S. Dist. LEXIS 118827 (N.D. W.Va. Aug. 21, 2013) (Stamp, J.) (internal citations omitted).

Similarly, the Judge Gregory Frost of the United States District Court for the Southern District of Ohio found that Paragraph 19 unambiguously grants defendant Chesapeake a single option to extend the lease or to renew a like lease with similar terms. *Eastham v. Chesapeake Appalachia, LLC*, 2013 WL 5274576 (S.D. Ohio Sept. 18, 2013) (Frost, J.).

The plaintiffs provide no reason for the Court to depart from the determinations of Judge Stamp and Judge Frost, and the Court agrees that the plaintiffs' argument in this regard lacks merit.

**B. Definitions of the Terms "Extend" and "Renew"**

The plaintiffs next argue that custom and usage in the oil and gas industry uses the terms "extend" and "renew" interchangeably. The Court does not find this argument persuasive.

5

As the plaintiffs state in their Memorandum in Support of Motion for Summary Judgment, in two previous cases dealing with the interpretation of identical language in Paragraph 19 of oil and gas leases, Judge Stamp of the Northern District of West Virginia and Judge Frost of the Southern District of Ohio held that the terms "extend" and "renew" in Paragraph 19 of identical oil and gas leases have discrete and separate meanings within the meaning of the leases [Doc. 63 at 24]. The plaintiffs seek to distinguish the former cases from the instant case by stating that two facts that were uncovered during discovery in a similar case were not present in the previous cases. First, the plaintiffs contend that Chesapeake's own expert testified at a deposition that although the terms "extend" and "renew" generally have distinct and separate meanings in the context of contracts in general, that it was common practice in the gas industry to use those terms interchangeably and indiscriminately in oil and gas leases. Second, the plaintiffs state that because Range Resources, the preparer and signatory of the subject oil and gas leases, has no opinion as to the meanings of the terms "extend" and "renew", this effectively takes a contrary position to the defendants [Id. at 22–23].

The Court is unpersuaded by the additional information cited by the plaintiffs, which does not affect previous courts' rulings. As Judge Stamp stated previously:

> [T]he plaintiff's reading would require this Court to find that the terms "extend" and "renew" are . . . essentially just repetitive iterations of the same verb. Such an interpretation would render meaningless the use of both terms rather than one or the other exclusively, and would declare the use of both terms "mere surplusage." Such a result is necessarily incorrect. Accordingly, each of these terms must be given effect as intentionally included independently of the other, and each afforded its plain and natural meaning.

***Brown v. Chesapeake Appalachia, LLC***, 2013 U.S. Dist. LEXIS 118827 at 12–13.

The additional information provided by the plaintiffs does not persuade the Court that the terms "extend" and "renew" should be read as interchangeable in this context.

### C. Contemplation of an Extension Versus Solely a New Lease

The plaintiffs next argue that the language of Paragraph 19 of "under similar terms a like lease" requires negotiations for a new lease [Doc. 63 at 15–16]. However, the issue of whether renewal of the lease requires any new term or lease to be negotiated is mooted by the Court's findings. The Court determined, above, that the language of Paragraph 19 grants a single option to extend the lease. As such, the Court need not address whether the contract's terms for renewal "under similar terms" requires negotiations for a new lease.

### D. Condition Precedent to Exercise of Option

The plaintiffs argue that defendant Chesapeake failed to validly exercise its option to extend or renew the lease because Chesapeake failed to do so in accordance with the manner set forth in the lease. According to the plaintiffs, the contract permitted Chesapeake to exercise its option to extend or renew only after the Lease expired. (Doc. 63 at 15–16).

The relevant sentence of Paragraph 19 states that "*Upon expiration of the lease* and within sixty (60) days thereinafter, Lessor grants to Lessee an option to extend or renew under similar terms a like lease" (emphasis added).

The defendant cites to the district court in the Southern District of Ohio, which rejected the argument that the phrase in Paragraph 19 creates a condition precedent in *Eastham v. Chesapeake Appalachia, LLC*, 2013 WL 5274576 (S.D. Ohio Sept. 18, 2013). The defendant contends that this Court should similarly reject the plaintiffs'

7

argument on the grounds that the contract is silent on the time and form of notice that the lessee should provide to the lessor to show its intent to exercise its option to extend and also because there is no case law invalidating an option based upon early notice or early exercise of an option.

The Court finds that although the contract creates a condition precedent to performance, the non-occurrence is excused because it is not a material part of the agreed exchange. Generally, if a condition precedent to a party's duty to perform does not occur, the party will be excused from further performance. ***Carty v. Westport Homes of N. Carolina, Inc.***, 472 F. App'x 255, 258 (4th Cir. 2012) "However, if the condition is of only minor importance, its happening is a mere technicality, and a forfeiture will result by insisting on its occurrence, the nonoccurrence as a result of impossibility or impracticability will be excused, and the duty that was subject to the condition's occurrence will become absolute despite its failure to occur. The failure of the condition to occur will not operate to discharge that party's further duty of performance." 14 WILLISTON ON CONTRACTS § 43:14 (4th ed.). This is known as impracticability, and excuses "the non-occurrence of a condition if the occurrence of the condition is not a material part of the agreed exchange and forfeiture would otherwise result." Id.

The Court's finding is consistent with current case law. "[T]he issue may also arise as to whether premature notice of exercise of an option of specified duration—that is notice given before the option period starts to run—constitutes timely notice. Of the few courts to address this issue, all have ruled that a lessee's premature notice of the exercise of an option to renew or extend a lease is nevertheless timely." 63 AM. JUR. PROOF OF FACTS 3d

8

423 (Originally published in 2001); *see also* **Goodyear Tire & Rubber Co. v. Kin Properties, Inc.**, 647 A.2d 478 (N.J. Super. Ct. App. Div. 1994).

Accordingly, the Court finds that exercise by defendants of their option rights prior to the expiration of the Leases by filing Notices of Extension of Oil and Gas Leases was untimely but did not invalidate the contract because impracticability excuses non-occurrence.

### E.  Testimony by Professor Kramer of Trade Custom, Practice, and Usage

The plaintiffs next contend that testimony by Professor Bruce Kramer, defendants' expert witness, establishes that Paragraph 19 is ambiguous and therefore the lease must be construed in favor of the plaintiffs and against defendants [Doc. 63 at 19–20]. The plaintiffs claim that Professor Kramer stated during his deposition that the terms "extend" and "renew" are used interchangeably when dealing with options to renew or extend oil and gas leases.

The defendants contest the admissibility of Professor Kramer's deposition testimony to determine ambiguity in a lease provision and claim that the testimony is irrelevant to the Court's determination of what Paragraph 19 means [Doc. 64 at 13]. The defendants state that Professor Kramer has submitted reports in all three cases—**Brown**, **Eastham**, and the instant case—that Paragraph 19 would be understood in the oil and gas industry as conveying an option to continue the terms of the existing Leases.

The Court has determined that no ambiguity exists in the language of the lease. The Court reviewed the deposition testimony where Professor Kramer was asked about other lease forms wherein the terms "extend" and "renew" were used interchangeably. However,

9

Professor Kramer's testimony about the meaning of the terms in different leases does not affect this Court's determination of the meaning of the terms within Paragraph 19 of these leases. Further, as to these leases Professor Kramer submitted a report which states that Paragraph 19 would be understood as conveying an option to extend the lease or an option to renew a like lease with similar terms.

Accordingly, the Court finds that the plaintiffs' argument lacks merit.

### F. Vagueness, Indefiniteness and/or Uncertainty

The parties next dispute whether the language allowing renewal "under similar terms a like lease" in Paragraph 19 is too vague to confer any rights. The plaintiffs contend that numerous essential terms of any purported extension or renewal, such as the term, amount of payment, is completely undetermined and therefore is too vague to confer any rights.

This issue is also mooted by the Court's determinations above. The Court found that the plain language of the lease permitted extension of the lease on the same terms. Therefore, the Court need not address whether the option to renew requires negotiation of a new lease because the terms and conditions are not sufficiently stated in the contract. Accordingly, the plaintiffs' argument that the provisions in Paragraph 19 are vague, indefinite, or uncertain, is moot.

### G. Purpose of Provision as Anti-Top Leasing or General Extension/Renewal

The plaintiffs' final argument is that the purpose of Paragraph 19 of the leases is to prevent a top lease from being entered by the lessors. Because it is not a general extension of renewal provision for the primary term of the lease, the second sentence, at issue here, should be construed to only be a restriction on top leasing.

The defendants contend that such a construction would render the second sentence of Paragraph 19 meaningless [Doc. 61 at 10]. The defendants claim that the second sentence of Paragraph 19 provides the option to extend or renew that is expressly contemplated in the first sentence of the Paragraph and cannot be logically directed at preventing the signing of a top lease because it relates to what Chesapeake can do to preserve the Lease beyond the primary term.

The Court agrees with the defendants that the plain language of the second sentence of Paragraph 19 provides Chesapeake with the option to extend the terms of the existing Lease. The plaintiffs' claim that Paragraph 19 is solely an anti-top leasing restriction lacks merit.

## IV. Conclusion

For the reasons stated above, the defendants' motion for summary judgment **[Doc. 60]** is **GRANTED** and the plaintiffs' motion for summary judgment **[Doc. 62]** is **DENIED**. Accordingly, the plaintiffs' Complaint **[Doc. 1]** is hereby **DISMISSED WITH PREJUDICE** and this matter is **ORDERED STRICKEN** from the active docket of this Court. The Clerk is directed to enter judgment in favor of the defendants.

It is so **ORDERED**.

The Clerk is hereby directed to transmit a copy of this Order to counsel of record.

**DATED**: April 29, 2014.

JOHN PRESTON BAILEY
CHIEF UNITED STATES DISTRICT JUDGE